IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALAN WOOLSEY, | ) | |
| Reg. No. 22616-026, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-CV-137-WKW |
| | ) | [WO] |
| WARDEN MILTON WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This is a First Step Act (FSA) case concerning the calculation and crediting of earned time credits, which Respondent argues is unreviewable by the court. However, the statute's stipulation of "shall" speaks otherwise. Specifically, the FSA says:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons *shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added) (citing 18 U.S.C. § 3624(g)).

Proceeding *pro se*, Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. # 1.) Since the time of filing to date, Petitioner has

been incarcerated at the Federal Prison Camp in Montgomery, Alabama, and Petitioner appropriately has named the warden as the respondent.[1]  This FSA case centers on the claimed wrongful withholding and rescission of earned time credits that should have been applied toward prerelease custody.  Although Petitioner admits receiving earned time credits for the full one-year sentence reduction for early transfer to supervised release, *see* § 3624(g)(3), he argues that additional earned time credits should have been applied toward his time in prerelease custody.  (Doc. # 1 at 5.)  He seeks an order for these credits to be applied for immediate transfer to prerelease custody under § 3632(d)(4)(C).  (Doc. # 1 at 6.)

Answering the petition, Respondent contends that the court lacks jurisdiction under § 2241 because Petitioner is challenging the conditions, rather than the duration, of his confinement.  (*See* Doc. # 12 at 4–5.)  Respondent also argues that, statutorily, the court cannot interfere with the Bureau of Prisons' decisions regarding the calculation and application of FSA time credits for prerelease custody.  (Doc. # 12 at 6, 9–10, 12.)  Alternatively, Respondent contends that Petitioner fails as a matter of law to allege a constitutional violation implicating a protected liberty interest.  (Doc. # 12 at 6.)  Notably, Respondent has not addressed the merits of

---

[1] In a § 2241 petition, the correct respondent is the individual who has custody over the petitioner. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  A prisoner filing a § 2241 petition must name the warden of the facility where he is confined.  The caption has been updated to reflect the warden's correct name, and the Clerk of Court is directed to amend the caption accordingly.

Petitioner's claims challenging the alleged miscalculation of earned time credits under the FSA.  (Doc. # 12.)  Petitioner filed a reply brief contesting Respondent's arguments and clarifying his claims.  (*See* Doc. # 14.)

Based upon careful consideration, the petition will be examined under the standards governing motions under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  The petition mostly passes scrutiny under these standards; therefore, additional briefing on the merits will be required, and this action will be set for an evidentiary hearing on the merits.

## II.    BACKGROUND

### A.    <u>Judgment of Conviction, Sentencing, and Prison Designation</u>

On October 7, 2019, the United States District Court for the Central District of Illinois sentenced Defendant to 180 months of imprisonment and ten years of supervised release for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[2]  *See United States v. Woolsey*, No. 18-10052-001 (C.D. Ill. Oct. 7, 2019), ECF No. 33.  On the same date, the court remanded Petitioner to the custody of the United States Marshal.  *Id.*  However, as sometimes is the case, Petitioner was not transported immediately to his designated

---

[2] In May 2023, the sentencing court reduced Petitioner's sentence to 153 months for "changed circumstances" but left intact the ten-year period of supervised release.  *See Woolsey*, No. 18-10052-001 (C.D. Ill. May 11, 2023), ECF No. 49.

3

Bureau of Prisons (BOP) facility for service of his sentence.  He arrived at his designated BOP facility on November 13, 2019.  (Doc. # 1 at 3.)

## B.    Petitioner's Allegations and Relief Sought

As discussed in more detail below, under the FSA, eligible federal prisoners can accrue program days that allow them to earn time credits toward early transfer to supervised release and/or early placement in prerelease custody.  Petitioner claims entitlement to 37 program days during the period when he was awaiting transport after sentencing to his designated prison (*i.e.*, October 7, 2019, through November 13, 2019).  Also, Petitioner claims that the BOP denied him an additional 10 program days between October 23, 2021, and November 8, 2021.  Although these 10 program days may have been withheld due to a pending transfer between correctional facilities, the reason is not clear but will be assumed for the time being.  Petitioner says that the BOP has marked these 47 program days as "disallowed."  (Doc. # 1 at 3; *see also* Doc. # 1-1 at 94.)

Petitioner asserts that starting May 14, 2020, the date he believes he should have been assessed as a low recidivism risk for the second consecutive time, the BOP has incorrectly awarded him only 10 days of earned time credits per month instead of 15.  Although his May 14, 2020 assessment is the only one where the BOP has designated him as low risk, he argues that he would have received the same rating but for multiple documentation errors, including the BOP's failure to record

4

the GED he earned prior to incarceration.  These errors have prevented him from earning the additional 5 earned time credits per month.  Additionally, he claims that in April 2021, the BOP erroneously changed his risk level from low to medium and applied this change retroactively, causing him to lose previously earned FSA time credits.  These events are a sample of the systematic errors he attributes to the BOP. (Doc. # 1 at 1, 3–4.)

Petitioner accrued 365 days of FSA earned time credits that the BOP applied to reduce his projected release date from July 23, 2029, to July 23, 2028.  (Doc. # 1 at 5; Doc. # 1-1 at 14; Doc. # 12-1.)  This is the maximum number of days—365— permitted by statute for reducing a custodial sentence where a petitioner is subject to a term of supervised release.  18 U.S.C. § 3624(g)(3).  This much is not in dispute. (*See, e.g.*, Doc. # 1 at 5.)  However, Petitioner contends that he has earned additional credits that the BOP has wrongfully withheld or rescinded.   (Doc. # 1 at 5.) Petitioner maintains that, after applying the additional FSA earned time credits, his eligibility date for transfer to prerelease custody was April 19, 2025.  (Doc. # 1 at 2.) However, the BOP calculates that date differently, having assessed his eligibility date for prerelease custody as January 24, 2028.  (Doc. # 12 at 2.)

To correct the BOP's alleged errors, Petitioner requests that the court order the BOP to do the following: (a) apply FSA earned time credits beginning October 7, 2019, the date Petitioner was sentenced, (b) apply 15 days of FSA earned time

credits per month beginning on May 14, 2020, and (c) calculate and apply FSA earned time credits "at the rate stipulated in the FSA . . . , thus transferring [him] to prerelease custody immediately."[3]  (Doc. # 1 at 6.)

## C.  **Procedural History**

After a review of the petition and Petitioner's payment of the filing fee, the court ordered service of the summons and petition on Respondent and the United States Attorney for the Middle District of Alabama.  (Doc. # 5, Order dated Mar. 5, 2025.)  The Order directed Respondent to file an answer detailing why the petition should not be granted, raising any applicable defenses, and providing all relevant BOP records and affidavits (or sworn statements) related to the claims in the petition. The Order also specified that filing dispositive motions would require court approval and that Petitioner had 60 days from the Order's date to amend the petition.  (Doc. # 5.)

Respondent answered the petition.  (Doc. # 12.)  The court ordered Petitioner to file a reply to the response and show cause "why his Petition should not be dismissed for the reasons cited by Respondent."  (Doc. # 13.)  The Order further explained that the court would decide if an evidentiary hearing is needed and, if not,

---

[3] Petitioner also cursorily requests the award of any credits for which he is eligible under the Second Chance Act of 2007.  (Doc. # 1 at 6.)  However, there are no allegations in the body of the petition that raise claims under the Second Chance Act.  This case is not about the Second Chance Act.

would resolve the petition as justice requires.  (Doc. # 13 (citing Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*)); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.").  Petitioner complied with the Order by filing a reply brief.  (Doc. # 14.)

## III.  JURISDICTION

Section 2241(a) grants jurisdiction to the district court to provide habeas relief when the inmate is confined within its district at the time the petition is filed.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004); *Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991).  Respondent does not contest this statutory grant of jurisdiction but argues that subject matter jurisdiction under § 2241 does not exist for relief seeking placement in prerelease custody based on allegedly wrongfully denied FSA earned time credits.  *See generally Rumsfeld*, 542 U.S. at 434 n.7 (referring to jurisdiction "in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court").  This jurisdictional issue is addressed below.

## IV.  STANDARDS OF REVIEW

Given Respondent's arguments (Doc. # 12), Petitioner's counterarguments (Doc. # 14), and the court's pronouncement to resolve the petition as justice requires (Doc. # 13), the petition will be evaluated under the standards governing motions to

dismiss for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See Rodriguez v. Fla. Dep't of Corr.*, 748 F.3d 1073, 1075 (11th Cir. 2014) (observing that courts may supplement the *Rules Governing Section 2254 Cases in the United States District Courts* with the Federal Rules of Civil Procedure when not inconsistent) (citing *Rules Governing Section 2254 Cases*, Rule 12)[4]; *cf. Cardoza v. Pullen*, 2022 WL 3212408, at *3 (D. Conn. Aug. 9, 2022) (A court examines "a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6).").

Under Rule 12(b)(1), challenges to subject matter jurisdiction can be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In this case, the review will be facial. Facial attacks challenge subject matter jurisdiction based on the allegations in the petition, and the district court takes the allegations as true in deciding whether to dismiss the petition. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). Regardless of the type of challenge, the burden to establish federal subject matter jurisdiction rests with the party bringing the claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411

---

[4] The Rules Governing Section 2254 Cases in the United States District Courts apply to § 2241 petitions under Rule l(b).

F.3d 1242, 1247 (11th Cir. 2005) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam)).  To withstand Rule 12(b)(6) scrutiny, the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Two additional considerations are pertinent.  First, exhibits attached to a petition are considered part of the petition and may be considered.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).  Second, a court may consider "a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the [petitioner's] claim and (2) undisputed[,]" meaning that "the authenticity of the document is not challenged."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted); *see also Walsh v. Boncher*, 652 F. Supp. 3d 161, 165 (D. Mass. 2023) (considering the declaration of a BOP correctional programs officer on a motion to dismiss because the authenticity of the declaration and the accompanying BOP records were not disputed).

Furthermore, documents filed by *pro se* litigants must be "liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106

(1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Courts also must "look behind the label" of a claim to see if, properly characterized, it fits a different statutory framework. *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990). However, "a court may not serve as de facto counsel for a party or rewrite a pleading." *United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021) (citation and internal quotation marks omitted).

It is through these lenses that the court considers the petition and the arguments.

## V. DISCUSSION

Respondent's arguments for dismissing the petition can be distilled into three points, with the first two addressing jurisdictional issues. First, Respondent argues that habeas jurisdiction is absent because the BOP has applied the maximum 365 days of FSA earned time credits permitted by statute to reduce Petitioner's sentence and transition him to supervised release. (*See* Doc. # 12 at 4–9.) According to Respondent, any additional FSA earned time credits would affect only Petitioner's eligibility for prerelease custody, rather than the actual length of his sentence, thereby making it a conditions-of-confinement claim. Second, under the Administrative Procedure Act, Congress has stripped federal courts of habeas jurisdiction to review individualized BOP decisions affecting the earning or application of FSA time credits. (*See* Doc. # 12 at 9–12.) Third, a federal prisoner

does not possess a liberty interest in FSA earned time credits or in his place of imprisonment that is protected by the Due Process Clause of the Fifth Amendment.[5] (*See* Doc. # 12 at 6–8.)

Because Petitioner's eligibility to earn and apply FSA time credits is central to the allegations raised in the petition, the discussion will begin with a summary of the relevant statutory framework, starting with the statutory landscape preceding the FSA.

## A.    <u>Statutory Setting Preceding the FSA</u>

After a district court sentences a federal defendant, the United States Attorney General, through the BOP, administers the sentence.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992).  Federal inmates who are "sentenced to a term of imprisonment . . . shall be committed to the custody of the [BOP] until the expiration of the term imposed, or until earlier released for satisfactory behavior."  18 U.S.C. § 3621(a).  The BOP determines the place of imprisonment by evaluating several factors, including facility resources, the nature of the offense, the prisoner's history and characteristics, statements from the sentencing court, and relevant policy statements from the Sentencing Commission.  § 3621(b).  Conferring substantial

---

[5] Petitioner argues that he has exhausted his administrative remedies (Doc. # 1 at 3), and Respondent has not challenged that assertion.  Because failure to exhaust administrative remedies is not jurisdictional and absent a challenge by Respondent, the court will accept Petitioner's argument.  *See Santiago-Lugo v. Warden*, 785 F.3d 467, 474 (11th Cir. 2015).

discretion on the BOP, Congress mandated that "a designation of a place of imprisonment . . . is not reviewable by any court." *Id.* Congress also has provided that the provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 554–55, 701–06, "do not apply to the making of any determination, decision, or order" under 18 U.S.C. §§ 3621–26. *Id.* at § 3625. Sections 3621 through 3626 are the provisions governing the BOP's placement designations.

Later, Congress enacted the Second Chance Act of 2007 (SCA) to "assist offenders reentering the community from incarceration to establish a self-sustaining and law-abiding life by providing sufficient transitional services." Pub. L. No. 110-199, § 3(a)(5), 122 Stat. 657 (2008). The SCA helps offenders reintegrate by expanding access to prerelease custody for up to 12 months "to the extent practicable." 18 U.S.C. § 3624(c)(1). Prerelease custody includes placement in home confinement for the shorter of 6 months or 10% of the prisoner's term of imprisonment. § 3624(c) (2). The transition to prerelease custody is subject to the BOP's discretion under § 3621(b). *See* § 3624(c)(4). The SCA predates the FSA and was the only mechanism for prerelease custody for BOP prisoners until the FSA passed.

## B. FSA Earned Time Credits

In 2018, Congress passed the FSA to broaden prisoners' access to non-custodial placements. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at

18 U.S.C. §§ 3621, 3624, 3631–35).  The FSA's provisions work together to motivate inmates to participate in specific programs and activities by allowing them to receive "earned time credits" for participating in "recidivism reduction programs." §§ 3621(h), 3624(g), 3632.

Section 3621(h) governs the BOP's implementation of the risk and needs assessment system developed under § 3632.  It requires the BOP to conduct initial assessments for all inmates, assign them to appropriate evidence-based recidivism reduction (EBRR) programs or productive activities (PAs), and expand the availability of such programs.

Section 3632 mandates the Attorney General's development of a "risk and needs assessment system," which serves as the foundation for the FSA's recidivism reduction framework.  The system is designed to evaluate each inmate's recidivism risk, classify inmates into risk categories, and determine the type and amount of EBRR programming or PAs appropriate for each inmate based on his or her criminogenic needs.  More specifically, in response to § 3632's directives, the BOP created the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to estimate inmates' risks of recidivism and identify their needs for programming. The four PATTERN risk scores are minimum, low, medium, and high.  *See* § 3632(a)(1); *see also Walsh v. Boncher*, 652 F. Supp. 3d 161, 164 (D. Mass. 2023) (describing PATTERN).  Eligible prisoners can earn 10 FSA time

credits "for every 30 days of successful participation in" EBBR programming or PAs. § 3632(d)(4)(A)(i). Inmates classified as minimum or low risk for recidivism who maintain this classification over two consecutive assessments earn an extra 5 days of time credits for every 30 days of participation, totaling 15 days. § 3632(d)(4)(A)(ii).

Section 3632(d) also details the application of earned time credits for eligible prisoners and specifies 68 categories of offenses that disqualify inmates from receiving these credits. Section 3632(d)(4)(C) provides that

> [t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

Section 3624(g) outlines the eligibility criteria for prisoners. First, the prisoner must have earned time credits equal to the remainder of his imposed term of imprisonment. § 3624(g)(1)(A). Second, the prisoner must have demonstrated a reduced recidivism risk or maintained a low risk during imprisonment. § 3624(g)(1)(B). Third, the prisoner's remaining sentence must have been computed "under applicable law." § 3624(g)(1)(C). Fourth, *for placement in prerelease custody*, the prisoner must have a minimum or low recidivism risk score in the last two reassessments or have a petition approved by the warden. The warden must

determine that the prisoner is not a danger to society, has made a good faith effort to reduce his recidivism risk, and is unlikely to recidivate. *See* § 3624(g)(1)(D)(i). Fifth, *for placement in supervised release*, the prisoner must have been assessed as a minimum or low risk to recidivate in the last reassessment. § 3624(g)(1)(D)(ii). Sections 3632(d)(4)(C) and 3624(g) thus work together, with § 3632(d)(4)(C) providing the mechanism for prisoners to earn time credits and § 3624(g) governing the eligibility and application of time credits.

Earned time credits are applied to accelerate an inmate's transfer either to prerelease custody, which includes residential reentry centers (RRCs) and home confinement, or to supervised release if such a term has been imposed. *See* § 3624(g). Additionally, beyond extending time in prerelease custody, the BOP may apply a prisoner's earned time credits to enable an earlier release from custody to supervised release. *See* § 3624(g)(3). Section 3624(g)(3) provides:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

*Id.*; *see also Guerriero v. Miami RRM*, 2024 WL 2017730, at *1 (11th Cir. May 7, 2024) (per curiam).

Under § 3624(g)(3), the BOP cannot apply more than one year's worth of FSA earned time credits toward early transfer to supervised release. In *Guerriero*, the Eleventh Circuit confirmed the scope of § 3624(g)(3) by affirming the district court's decision that the BOP had "applied the maximum 12 months' worth of earned time credits allowed by the FSA to begin [the petitioner's] term of supervised release." 2024 WL 2017730, at *1. However, unlike early transfer to supervised release, the FSA does not impose a numerical cap on the amount of earned time credits that can be applied toward transfer to prerelease custody.

## C.    Subject Matter Jurisdiction Under § 2241

The court tackles the jurisdictional issues first as it must. Because Petitioner is proceeding *pro se*, his allegations are liberally construed to discern whether jurisdiction exists to consider his petition "on a legally justifiable base." *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991).

Section 2241 offers a remedy for federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3). Federal prisoners can seek habeas corpus relief under § 2241 to challenge either (1) the "fact or duration" of confinement, *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973), or (2) the execution of the sentence itself. *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008); *see also Cortes-Morales v. Hastings*, 827 F.3d 1009, 1014 (11th Cir. 2016) (holding that § 2241 petitions are proper "to

challenge the execution, as opposed to the validity, of a sentence") (citing *Antonelli*,

542 F.3d at 1352 n.1).  Determining what constitutes a challenge to the execution of

a sentence—when its duration remains unchanged—is where things get murky.  As

noted by the Third Circuit in *Woodall v. Fed. Bureau of Prisons*, "the precise

meaning of 'execution of the sentence' is hazy."  432 F.3d 235, 242 (3d Cir. 2005).

### 1.    *Respondent's Argument that Jurisdiction is Lacking over Claims Seeking Immediate Placement in Prerelease Custody*

Respondent contends that this court lacks jurisdiction to hear the § 2241

petition because the requested relief—immediate placement in prerelease custody

based upon allegedly wrongfully withheld FSA earned time credits—does not

impact the length of Petitioner's sentence.  (Doc. # 12 at 5.)  Respondent argues that

the petition's claims pertain solely to the conditions of confinement because the

relief sought would merely change the location of serving the custodial sentence, not

shorten it.  He relies on the general premise that "[c]laims challenging the fact or

duration of a sentence fall within the 'core' of habeas corpus, while claims

challenging the conditions of confinement fall outside of habeas corpus law."  *Vaz*

*v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (per curiam) (citations omitted);

*see also Pinson v. Carvajal*, 69 F.4th 1059, 1075 (9th Cir. 2023) ("[W]e recognize

that the Supreme Court has left open the key question of whether there are

circumstances when a challenge to the conditions of confinement is properly brought

in a petition for writ of habeas corpus."), *cert. denied sub nom.*, *Sands v. Bradley*, 144 S. Ct. 1382 (2024).  Respondent also references district court decisions from other circuits that have determined that § 2241 does not grant jurisdiction for relief requesting placement in prerelease custody because such relief changes only the location for serving the sentence.  (Doc. # 12 at 5–6 (citing district court decisions from Arkansas, Mississippi, and Texas).)

Petitioner admits that the BOP has awarded him 365 days of earned time credits to accelerate his projected release date to commence his term of supervised release.  (Doc. # 1 at 5.)  No additional relief is available under the FSA for applying earned time credits to reduce the length of Petitioner's sentence.  *See* § 3624(g)(3) (limiting early transfers to supervised release to a statutory cap of 365 days).

Instead, as stated, Petitioner wants the BOP to apply the additional FSA earned time credits to extend his time in prerelease custody.  The weight of authority indicates that prerelease custody is part of the term of imprisonment.  In other words, an inmate who is transferred to prerelease custody remains in the BOP's custody serving the sentence of imprisonment, although not in a brick-and-mortar prison setting, and the parties have not argued otherwise.  *See, e.g.*, § 3624(c)(1) (providing that the BOP must "ensure that a prisoner serving a term of imprisonment spends a portion of the final months *of that term* (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the

18

reentry of that prisoner into the community") (emphasis added); *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (treating placement in home confinement as changing an inmate's "place of imprisonment"); *Wessels v. Houden*, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) ("Prerelease custody is part of a term of imprisonment.") (citing § 3624(c) and collecting cases); *Spang v. Eischen*, 2023 WL 3495406, at *3 (D. Minn. May 17, 2023) ("Courts consistently address home confinement as a place of imprisonment."). Based on this authority, FSA earned time credits applied to advance a prisoner's placement on prerelease custody do not impact the duration of the imposed term of imprisonment.

However, Respondent has not cited, and independent research has not uncovered, any on-point binding precedent supporting the argument that § 2241 does not confer jurisdiction for relief seeking placement in prerelease custody under the FSA. It does not appear that the Eleventh Circuit has specifically addressed what statutory vehicle should be used by a federal prisoner to challenge where a federal sentence should be served for purposes of prerelease custody under the FSA.

There otherwise is a circuit split of authority on the issue of whether a § 2241 petition is proper for challenges pertaining to prerelease custody. To begin, there is non-binding support for Respondent's argument. For instance, the Fifth Circuit has established a "'bright-line rule' . . . that if a favorable determination of the prisoner's claim would not automatically entitle him to *accelerated release*, then the proper

vehicle is a civil rights suit."  *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (emphasis added).  In *Melot*, the Fifth Circuit ruled that § 2241 jurisdiction did not encompass the petitioner's claim regarding the improper denial of home confinement under the FSA's pilot program for eligible elderly offenders, even though one might argue that the program permits release from "institutional custody."  *Id.*  Based on the holding in *Melot*, district courts in the Fifth Circuit have applied this bright-line rule when a petitioner's requested relief seeks placement in prerelease custody.  *See, e.g.*, *Quintero-Diarte v. Warden, Yazoo City Low*, 2025 WL 1343037, at *1 (S.D. Miss. May 8, 2025) (holding that the prisoner's petition could not be brought under § 2241 because his claim that the FSA entitled him to serve the remainder of his sentence in prerelease custody "challenge[d] only <u>where</u> he should serve his sentence, not whether or how long he should serve") (emphasis in original); *Lawrence v. Warden of Seagoville*, 2025 WL 1240765, at *2 (N.D. Tex. Apr. 4, 2025) ("[P]rerelease placement to RRC or HC is a change in conditions of confinement and is not cognizable under § 2241."), *report and recommendation adopted*, 2025 WL 1239725 (N.D. Tex. Apr. 29, 2025).

Furthermore, as cited by Respondent, district courts in the Eighth Circuit similarly have found no jurisdiction under § 2241 for claims seeking FSA earned time credits for prerelease custody.  For example, in *Reaves v. Garrett*, the magistrate judge entered a report and recommendation, concluding that jurisdiction under

§ 2241 was lacking because "[p]lacement in pre-release custody changes only the place where a sentence is served" and "does not alter the fact or duration of imprisonment."   2025 WL 890147, at *2 (E.D. Ark. Mar. 21, 2025), *report and recommendation adopted*, 2025 WL 1118580 (E.D. Ark. Apr. 15, 2025).   The magistrate judge also noted that, although the Eighth Circuit previously had considered claims for prerelease custody under § 2241, it had since clarified that habeas jurisdiction is absent for such challenges because the relief does not affect the length of the sentence.  2025 WL 890147, at *2 n.3 (citing *Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014), for the latter principle); *see also Fongers v. Garrett*, 2024 WL 3625237, at *2 (E.D. Ark. Aug. 1, 2024) (recommending dismissal of the § 2241 petition where the petitioner already had earned 365 days of FSA time credits for early transfer to supervised release and any remaining credits would affect the place of confinement (*i.e.*, residential reentry center or home confinement) but not the duration of custody), *report and recommendation adopted*, 2024 WL 4652193 (E.D. Ark. Nov. 1, 2024); *Wessels v. Houden*, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) ("The Court has no habeas jurisdiction in this matter because the only relief that Wessels seeks is a transfer to prerelease custody."), *report and recommendation adopted*, 2023 WL 7168926 (D. Minn. Oct. 31, 2023).

On the other side of the issue, at least three circuits—the First, Second, and Third—have held that habeas jurisdiction is proper under § 2241 for pre-FSA claims

21

challenging denials of transfers to community confinement centers. *See Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015) (observing that § 2241 can be used "to challenge placement (or lack thereof) in a community confinement center") (citations omitted).[6]  Similarly, in *Levine v. Apker*, the Second Circuit held that jurisdiction existed under § 2241 for a challenge to the lawfulness of BOP agency actions prohibiting the petitioner's transfer to a "community corrections center" (CCC), also described as a halfway house, until 10% of his sentence remained.  455 F.3d 71, 78 (2d Cir. 2006).  The action impacted the petitioner's "place of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP penal facilities."  *Id.*

Furthermore, as part of its jurisdictional holding, the Third Circuit has distinguished incarceration in a penal institution from a halfway house.[7]  *See*

---

[6] At least one district court in the First Circuit has relied on *Francis* to conclude that § 2241 is the proper vehicle to "adjudicate claims . . . asserting that the BOP has unlawfully delayed a prisoner's transfer to a community-based custodial setting."  *Doan v. FCI Berlin Warden*, 2025 WL 971685, at *2 (D.N.H. Feb. 24, 2025) (citing *Francis*, 798 F.3d at 36), *report and recommendation adopted*, 2025 WL 968927 (D.N.H. Mar. 31, 2025).

[7] In *Woodall v. Fed. Bureau of Prisons*, the sentencing court's judgment recommended that the petitioner spend the last six months of imprisonment in a halfway house pursuant to § 3624(c). 432 F.3d 235, 238 (3d Cir. 2005).  However, the BOP limited his placement in a halfway house to 10 weeks, citing internal regulations.  The petitioner filed a habeas petition under § 2241, arguing that the BOP's regulations "impermissibly ignored the placement recommendations of his sentencing judge."  *Id.*  The Third Circuit held that the claim related to the execution of the sentence and was properly brought under § 2241, as it involved the BOP's failure to follow the district court's sentencing recommendation.  *See id.* at 243–44.  In this regard, *Woodall* differs from

*Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005). The *Woodall* court adopted a "plain meaning" approach to the definition of "execution," which means "to 'put into effect' or 'carry out.'" *Id.* (citation omitted). The court examined a former version of § 3624(c), which then permitted (and still permits) placing prisoners in CCCs to prepare for re-entry into the community.[8] Concluding that the petitioner's claim differed from "garden variety prison transfers" because CCCs serve distinct goals, the court explained:

> Carrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution. More specifically, in finding that Woodall's action was properly brought under § 2241, we determine that placement in a CCC represents more than a simple transfer. Woodall's petition crosses the line beyond a challenge to, for example, a garden variety prison transfer.
>
> The criteria for determining CCC placement are instrumental in determining how a sentence will be "executed." CCCs and similar facilities, unlike other forms of incarceration, are part of the phase of the corrections process focused on reintegrating an inmate into society. The relevant statute specifically provides that a prisoner should be placed in a CCC or similar institution at the end of a prison sentence to "afford the prisoner a reasonable opportunity to adjust to and prepare for . . . re-entry into the community." 18 U.S.C. § 3624. CCCs thus satisfy different goals from other types of confinement.

---

Woolsey's case, as no argument or claim has been made that the sentencing court issued a recommendation similar to the one in *Woodall*.

[8] As one court has noted, "[A]t some point the BOP began referring to 'halfway houses' as Residential Reentry Centers (RRC) instead of the former term Community Correctional Centers . . . ." *United States v. Siegel*, 2013 WL 461217, at *1 (D. Vt. Feb. 7, 2013). Section 3624(c)(1) retains the usage of "community correctional center," while the FSA uses the term "residential reentry center." § 3624(g)(2)(B).

*Id.*[9]

The court finds the position of the First, Second, and Third Circuits more persuasive. In particular, *Woodall* underscores the unique nature of CCC placements compared to standard prison transfers. By recognizing that CCCs played a crucial role in the reintegration process, the court highlighted that such placements are integral to the execution of a sentence, rather than mere administrative decisions. *Woodall* recognized that this distinction is pivotal for establishing habeas jurisdiction under § 2241.

*Woodall*, a pre-FSA decision, focused on § 3624(c), which then and now, promotes prerelease custody for prisoners approaching the end of their sentences to help inmates transition back into the community. The introduction of § 3624(g) by the FSA complements § 3624(c) by broadening the scope for prerelease custody through earned time credits under the risk and needs assessment system. Both subsections share the overarching goal of promoting successful reintegration into society.

Additionally, there is pre-FSA authority from the Eleventh Circuit and its lineage that supports *Woodall*'s jurisdictional approach. The decision in *United States v. Saldana*, 273 F. App'x 845 (11th Cir. 2008), while unpublished, is

---

[9] *Woodall*'s noted overruling risk pertains not to its jurisdictional holding but to its ruling on the validity of the challenged 2005 BOP regulations.

instructive.  In *Saldana*, federal prisoners, proceeding *pro se*, moved the district court to "lift a separation order so that they [could] be confined in the same prison." *Id.* at 846.  The Eleventh Circuit first addressed the correct statutory authority:

> This Court has considered an attack by a federal prisoner on his place of confinement to be relief sought pursuant to 28 U.S.C. § 2241. *Ledesma v. United States*, 445 F.2d 1323, 1323–24 (5th Cir. 1971) (affirming a district court construing a 28 U.S.C. § 2255 motion that attacked the place of confinement as a § 2241 petition); *see also Beck v. Wilkes*, 589 F.2d 901, 902–04 (5th Cir. 1979) (addressing a § 2241 petition that challenged the transfer of a federal prisoner from a federal facility in Virginia to a federal facility in Georgia).  The appellants are challenging where they are confined.  Thus, the district court should have construed their motions as federal habeas petitions filed pursuant 28 U.S.C. § 2241.

*Id.* (internal footnote omitted).

*Saldana* relied on binding precent from the Fifth Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions rendered prior to October 1, 1981).  Other district courts in this circuit have cited *Saldana* with approval.  *See, e.g.*, *Reyes v. Warden, FCI Jesup*, 2025 WL 2463765, at *2 n.2 (S.D. Ga. July 25, 2025) (citing *Saldana*, 274 F. App'x at 846) (noting that, while courts generally do not allow an inmate to challenge his public safety factor (PSF) under § 2241, "[t]he more convincing line of authority supports treating PSF challenges *seeking release to home confinement* as cognizable in a § 2241 petition" (emphasis added)), *report and recommendation adopted*, 2025 WL 2463766 (S.D. Ga. Aug. 27, 2025); *Jenner v. Stone*, 2018 WL 2976995, at *1

25

(S.D. Ga. May 16, 2018) (citing *Saldana*, 273 F. App'x at 846) (observing that "the Eleventh Circuit has found challenges by a federal prisoner to his place of confinement may be considered in a § 2241 petition"), *report and recommendation adopted*, 2018 WL 2972350 (S.D. Ga. June 13, 2018); *Baranwal v. Stone*, 2015 WL 171410, at *2 (S.D. Ga. Jan. 13, 2015) (citing *Saldana*, 273 F. App'x at 846) (rejecting the argument that a § 2241 petition is not the proper vehicle for allegations challenging "the denial of a transfer" and observing that "the Eleventh Circuit has found that challenges by a federal prisoner to his place of confinement, such as Petitioner's challenge here, are proper in a § 2241 petition"); *accord Meza v. Wells*, 2009 WL 4250026, at *1 (S.D. Ga. Nov. 23, 2009).  Additionally, a district court in the Northern District of Alabama has recognized that "courts are divided on whether § 2241 is the proper route for claims seeking release to home confinement under the . . . First Step Act."  *Crinel v. Fed. Bureau of Prisons*, 2021 WL 2559771, at *2 (N.D. Ala. May 21, 2021), *report and recommendation adopted*, 2021 WL 2555287 (N.D. Ala. June 22, 2021).  The *Crinel* court found that "the petition's claims relating to the BOP's refusal to release her to home confinement are best characterized as challenges to the execution of her sentence, and therefore her petition is cognizable under 28 U.S.C. § 2241."  *Id.*; *see also Williams v. Flournoy*, 732 F. App'x 810, 811 (11th Cir. 2018) (per curiam) (holding that a petition challenging the BOP's refusal

to transfer a prisoner to a minimum-security camp constituted "a challenge to the execution of his sentence," thereby falling under § 2241 jurisdiction).

In conclusion, Respondent's arguments do not address competing authority. This authority includes the decisions from this circuit in *Saldana*, *Ledesma*, and *Beck*, as well as from the First, Second, and Third Circuits, which have addressed federal inmates' challenges to the location of confinement under § 2241. In the absence of more on-point precedent, these decisions support a finding that § 2241 is the appropriate jurisdictional vehicle for challenging denials of placement in prerelease custody under the FSA. Additionally, *Woodall* is persuasive for its discussion of the distinction of CCCs from ordinary imprisonment. The court finds that jurisdiction under § 2241 exists for Petitioner's claims seeking placement in prerelease custody.

### 2.    *Respondent's Argument that 18 U.S.C. § 3625 Bars this Court's Jurisdiction*

Respondent argues that Congress has stripped this court of jurisdiction "to review the individualized administrative decision leading to [Petitioner] allegedly being denied the opportunity to redeem FSA time credits in order to obtain immediate halfway house placement." (Doc. # 12 at 9.) He relies on 18 U.S.C. § 3625, titled "Inapplicability of the Administrative Procedure Act" (APA), as well

as on decisions from district courts in West Virginia, Kentucky, and Georgia.  (Doc. # 12 at 9–12.)

Section 3625 mandates that the provisions of the APA governing judicial review (5 U.S.C. §§ 701–06) do not apply to "the making of any determination, decision, or order under this subchapter" (which is Subchapter C).  Subchapter C, titled "imprisonment," contains 18 U.S.C. §§ 3621 through 3626.  The APA, thus, plainly precludes this court's review of the BOP's decisions made under any provision in §§ 3621 to 3626.  *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625."); *see generally Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000) (concluding that § 3625 precludes habeas review of the BOP's "adjudicative decisions").  Additionally, the FSA amended § 3621(b) to provide expressly:  "Notwithstanding any other provision of law, a designation of a place of imprisonment *under this subsection* is not reviewable by any court."  § 3621(b) (emphasis added).

A number of courts have rejected prisoners' challenges to the BOP's decisions affecting the calculation of FSA earned time credits, finding that they are not subject to judicial review based on § 3625's jurisdictional bar.  *See Monsevaiz v. Doerer*, 2025 WL 808235, at *2 (C.D. Cal. Jan. 10, 2025) ("Decisions regarding a prisoner's

recidivism risk appear to fall within [§ 3625's] jurisdictional bar."), *report and recommendation adopted*, 2025 WL 808233 (C.D. Cal. Mar. 12, 2025); *Brown v. Holzapfel*, 2024 WL 3264795, at *4 (S.D. W. Va. June 6, 2024) ("This Court agrees . . . that 18 U.S.C. § 3625 excludes from judicial review . . . the implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h), and the BOP's eligibility determinations with respect to the application of FSA time credits[,] 18 U.S.C. § 3624(g)(1)." (internal quotation marks omitted)), *report and recommendation adopted*, 2025 WL 19064, at *3 (S.D. W. Va. Jan. 2, 2025); *Johnson v. O'Donnell*, 2024 WL 3927643, at *3 (D.S.D. Mar. 29, 2024) ("A challenge to the BOP's calculation of a prisoner's FSA credits in a specific case is an adjudicative decision which is not subject to judicial review." (citation omitted)), *report and recommendation adopted*, 2024 WL 3925828 (D.S.D. Aug. 23, 2024); *Newell v. Fikes*, 2023 WL 2543092, at *2 (S.D. Ga. Feb. 21, 2023) ("Newell's requests for a reduction of his recidivism risk level and whether to award 15 days' credit for every 30 days of participation on EBRR programs falls under the purview of § 3625. The BOP's determination on this matter is an adjudicative, discretionary determination and not a rulemaking one. 'And that decision is not subject to judicial review.'").

In his reply brief, Petitioner says that he "is not asking this Court to review the individualized administrative decisions to withhold FSA credits to him." (Doc. # 14 at 3.) Instead, he says that he "is asking this Court to review the [allegedly]

unlawful BOP regulation[s] 28 C.F.R. § 523.42 and .44," which he argues conflicts with § 3632(d)(4) and has been used to deny his earned FSA time credits.  (Doc. # 14 at 3–4 (alterations added).)    Additionally, Petitioner's allegations that the BOP denied him 10 program days while he was in transit between federal facilities support a claim, liberally construed, challenging 28 C.F.R. § 523.41(c)(4)(iii).  (*See* Doc. # 1 at 4; Doc. # 14 at 2, 3.)  The court interprets Petitioner's reply brief as clarifying that he is bringing three claims challenging the BOP's regulations.

The first is a challenge to 28 C.F.R. § 523.44(a)(1) on grounds that it conflicts with the FSA by improperly granting the BOP discretion over when to transfer inmates to prerelease custody, despite Congress's use of the word "shall."  *Compare* § 523.44(a)(1) *with* § 3632(d)(4)(C) (where the regulation substitutes "may" for the statutory "shall").[10]  The second is a challenge to 28 C.F.R. § 523.42(a).  Petitioner cites *Sharma v. Peters* in which the inmate successfully argued that this regulation conflicts with 18 U.S.C. §§ 3585(a) and 3632(d)(4), concerning the commencement date for earning FSA time credits.[11]  756 F. Supp. 3d 1271, 1280–82 (M.D. Ala.

---

[10] Section 523.44, titled "Application of FSA Time Credits," states that the BOP "may apply FSA Time Credits toward prerelease custody or supervised release" when certain conditions are met. § 523.44(a)(1); *accord* § 523.44(c)–(d).  The regulation uses "may" instead of "shall," as found in 18 U.S.C. § 3632(d)(4)(C).

[11] Section 523.42, titled "Earning First Step Act Credits," states that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)."  § 523.42(a).

2024). The third is a challenge to 28 C.F.R. § 523.41(c)(4)(iii).[12] In *Sharma*, the court also ruled that the BOP's reliance on 28 C.F.R. § 523.41(c)(4)(i–iv) to deem the inmate ineligible for FSA earned time credits during certain periods, including in-transit status, was wrong because the regulation contravened § 3632(d)(4)(B). *See id.* at 1284–85. Although Petitioner's § 2241 petition does not explicitly allege that the BOP's regulations—specifically, §§ 523.44(a)(1), 523.42(a), and § 523.41(c)(4)(iii)—conflict with federal statutes and have been improperly used to withhold FSA earned time credits, the court construes Petitioner's reply brief as a clarification and more definite statement of his petition.

The Eleventh Circuit has held that 18 U.S.C. § 3625 does not preclude judicial review where the petitioner challenges the underlying regulations that establish the criteria governing the BOPs decision-making process. *See Cook v. Wiley*, 208 F.3d 1314, 1314 (11th Cir. 2000); *see also United States v. Warmus*, 151 F. App'x 783, 786 (11th Cir. 2005) (citing *Lopez v. Davis*, 531 U.S. 230, 232–33 (2001)) (holding that "[a] prisoner in federal custody may bring an action under § 2241 to attack, inter

---

[12] Section 523.41, titled "Definitions," states that

> (4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to: . . .
> (iii) Temporary transfer to the custody of another Federal or non–Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.)[.]

§ 523.41(c)(4)(iii).

alia, Bureau regulations"); *Byrd v. Hasty*, 142 F.3d 1395, 1397 (11th Cir. 1998) (deciding an inmate's challenge under § 2241 that the BOP's interpretation of § 3621(e)(2)(B) conflicted with the plain language of the statute). Judicial review of an agency's regulation, however, is limited to "whether the agency acted outside its statutory limits or violated the Constitution."[13]  *Newell v. Fikes*, 2023 WL 2543092, at *2 (S.D. Ga. Feb. 21, 2023) (citing *Webster v. Doe*, 486 U.S. 592, 597, 603 (1988) (further citations omitted)), *report and recommendation adopted*, 2023 WL 2541126 (S.D. Ga. Mar. 16, 2023); *accord Santiago-Lebron v. Fla. Parole Comm'n*, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); *see also Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011) (holding that "judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority").

In sum, judicial review is available for Petitioner's claims that the BOP's regulations conflict with federal statutes, *i.e.*, that the regulation exceeds the BOP's statutory authority.  Hence, Petitioner adequately has stated the following claims,

---

[13] The standard governing the court's review of whether challenged BOP's regulations are valid statutory interpretations changed last year. In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which mandated that federal courts defer to agency interpretations of statutes, even if the court interpreted the statutes differently.  Under *Loper*, federal courts now must exercise independent judgment to determine whether an agency has acted within its statutory authority and cannot defer to an agency's interpretation simply because a statute is ambiguous. *Loper*, 603 U.S. at 413.

making Rule 12(b)(6) dismissal inappropriate:  (1) a claim that § 523.44(a)(1) cannot categorically be applied to deny the application of FSA earned time credits exceeding 365 days for prerelease custody; (2) a claim that § 523.42(a) cannot categorically be applied to render Petitioner ineligible for 37 program days while awaiting transport post-sentencing; and (3) a claim that § 523.41(c)(4)(iii) cannot categorically be applied to render Petitioner ineligible for 10 program days due to a pending transfer.

Petitioner has clarified that he is not seeking judicial review of the BOP's individualized decisions concerning him.  (Doc. # 14 at 3.)  This concession appears to negate his claim that since May 14, 2020, the BOP has placed him in the wrong recidivism risk category due to documentation errors, resulting in an award of only 10 days of FSA earned time credits per month instead of 15.  *See Monsevaiz v. Doerer*, 2025 WL 808235, at *2 (C.D. Cal. Jan. 10, 2025) ("Decisions regarding a prisoner's recidivism risk appear to fall within [§ 3625's] jurisdictional bar."). Consequently, this claim will be dismissed.

## D.     Violation of the United States Constitution:  The Fifth Amendment's Due Process Clause

Respondent's next argument presumes that Petitioner is seeking habeas relief for a violation of the Fifth Amendment's Due Process Clause.  *See generally* § 2241(c)(3) (extending the writ of habeas corpus to prisoners who are in custody

"in violation of the Constitution").  Respondent argues that Petitioner does not have a protected liberty interest in the application of FSA earned time credits toward prerelease custody.  His position is that once an inmate accrues the maximum of 365 days of FSA credits for early transfer to supervised release and the BOP applies those days to reduce the sentence, a habeas court can offer no further relief.  (Doc. # 12 at 6 nn.5, 8.)  This argument reflects Respondent's stance that prerelease custody is part of the sentence and does not reduce its length.

Respondent also asserts that the BOP's decisions on applying FSA earned time credits to prerelease custody are discretionary and that such discretionary decisions cannot establish liberty interests as a matter of law.  (Doc. # 12 at 4 & 6 n.5 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (recognizing that "[i]f the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected liberty interest." (internal citation omitted))).)

In his petition, Petitioner does not expressly allege a violation of the Fifth Amendment's Due Process Clause.  However, he complains that in April 2021, the BOP incorrectly changed his risk level from low to medium retroactively, resulting in the loss of previously earned FSA time credits.  (Doc. # 1 at 4.)  He further claims that the BOP revoked these FSA earned time credits despite his compliance with all

rules and that the "loss of" FSA earned time credits requires "written notice." (Doc. # 1 at 4, 5.) Also, in his reply brief, Petitioner argues a protected liberty interest in "First Step Act prerelease custody," citing the mandatory language ("shall") in § 3632(d)(4)(C). (Doc. # 14 at 1.) Based upon a liberal interpretation of the petition, as clarified in the reply brief, the court finds that Petitioner is asserting a procedural due process claim under the Fifth Amendment, specifically, that the BOP rescinded his earned FSA time credits without due process.

As relevant here, "to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty . . . interest protected under the Fifth Amendment." *Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir. 2000). The initial step is identifying whether Petitioner has alleged a protected liberty interest.

The Supreme Court in *Wolff v. McDonnell* established that prisoners do not lose all due process protections by virtue of their incarceration. 418 U.S. 539, 555–56 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country" and "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime."). In *Wolff*, Nebraska inmates challenged the revocation of good time credits without adequate procedures. *Id.* at 553. Nebraska's statutory scheme provided mandatory sentence reductions for good behavior and allowed for forfeiture of such credits only for serious misconduct. *Id.* at 546–47. The Court determined that while the Due Process Clause of the Fourteenth

Amendment itself does not inherently create a liberty interest in good time credits, Nebraska's statutory scheme did.[14]  *Id.*  It held:

> [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Id.* at 557; *see also id.* at 546 n.6 (discussing Nebraska's statute governing good-time credit).  *Wolff* emphasized the necessity of due process before revoking *earned* statutory good time credits.  *See Dean-Mitchell v. Reese*, 837 F.3d 1107, 1112 (11th Cir. 2016) (citing *Wolff*, 418 U.S. at 557–58) ("As the district court correctly recognized, Dean–Mitchell has a protected liberty interest in the statutory Good–Time credits that he has earned.").  However, it is important to note that *Wolff* did not address a situation where the revocation of time credits did not impact the *length* of a prisoner's sentence.

Nearly two decades later, in *Sandin v. Conner*, the Court acknowledged that after *Wolff*, it had taken a wrong turn in a series of cases.  *See* 515 U.S. 472, 479–483 (1995).  It did so by shifting away from assessing "whether the State created an

---

[14] Decisions interpreting the Fourteenth Amendment's Due Process Clause also apply to the Fifth Amendment's Due Process Clause.  As noted in *Doe v. U.S. Department of Justice*, "The Supreme Court has consistently applied the same standards to determine deprivation of liberty without due process under the fifth and the fourteenth amendments."  753 F.2d 1092, 1105 n.13 (D.C. Cir. 1985) (citation omitted).

interest of 'real substance' comparable to the good time credit scheme of *Wolff*" and instead focused on whether the State (primarily through prison regulations) "had used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Id.* at 480 (quoting and abrogating in part *Hewitt v. Helms*, 459 U.S. 460 (1983)). The decision in *Olim v. Wakinekona*, 461 U.S. 238 (1983)—upon which Respondent relies—was included in that series of cases. *See Sandin*, 515 U.S. at 481.

As the *Sandin* Court explained, this wrong turn led to two negative impacts. First, states were discouraged from standardizing prison management procedures for uniform treatment, as they might avoid creating liberty interests by minimizing regulations or granting broad discretion to correctional staff. Second, the intense focus on mandatory-versus-discretionary language resulted in increased federal court involvement in daily prison management, often wasting judicial resources without significant benefits. *Id.* at 482–83.

*Sandin* thus reversed course, "return[ing] to the due process principles" established in *Wolff*. *Id.* at 483. *Sandin* recognized, as *Wolff* established, that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* In *Wolff v. McDonnell*, Nebraska had created a statutory right to good time credits and "itself recogniz[ed] that its deprivation is a sanction authorized for major misconduct." 418 U.S. 539, 557 (1974). While *Sandin*

reaffirmed the holding in *Wolff* that due process rights attached to liberty interests of "real substance," it also narrowed the definition of what constitutes a liberty interest of real substance. The Court held that liberty interests of real substance are confined to "freedom from restraint" that either (1) "will inevitably affect the duration of [the prisoner's] sentence," or (2) will impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487.

In *Sandin*, the inmate challenged the imposition of segregated confinement for thirty days as discipline. *Id.* at 475–76. The Court concentrated on the "nature of the deprivation," assessing its severity in degree or kind, rather than on the content of the statute. *Id.* at 481. It held that the discipline imposed did not constitute "a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence" of thirty years to life. *Id.* at 485. As a result, the inmate was not entitled to procedural due process protections before being placed in segregation. *Id.*

Respondent has not addressed or distinguished these Supreme Court precedents. Based on these decisions, it is reasonable for Petitioner to argue that Congress established a statutory right to FSA time credits, at least once they are earned. The source of authority for the sought-after right in this case—the application of *earned* FSA time credits for prerelease custody—is unequivocally a

38

statute enacted by Congress.[15]  The FSA mandates that earned time credits "*shall* be applied toward time in prerelease custody or supervised release" and that the BOP "*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphases added).  Section § 3624(g) outlines the eligibility criteria for inmates to have earned time credits applied toward prerelease custody or early release to supervised release. Once a prisoner is deemed eligible, the FSA requires (using the command "shall") that earned time credits must be applied in one of the two specified ways.

Furthermore, Congress mandates that the BOP provide protections for prisoners whose FSA earned time credits are reduced based on violations of prison rules or rules governing EBRR programs and PAs.  *See* § 3632(e).  These protections include providing "written notice to the prisoner" and prohibit the BOP from reducing "any future time credits that the prisoner may earn." *Id.*  These statutory protections align this case with a key aspect of what *Wolff* found significant about Nebraska's statutory scheme, namely that it permitted the forfeiture or withholding of earned credits only in instances of serious misconduct.  418 U.S. at 546–47.

The statutory language demonstrates that the right to FSA earned time credits is established by legislative mandate.  Once the credits are earned and the prisoner

---

[15] Petitioner's allegations that he has earned the FSA time credits are taken as true at this stage.

meets the statutory eligibility criteria, Congress confers a benefit that cannot be taken away without due process protections.  Respondent's focus on the BOP's discretion vis-à-vis prerelease custody decisions under the FSA does not undermine this conclusion.  (*See* Doc. # 12 at 4, 6 n.5.)  True, the FSA gives a measure of discretion to the BOP.  The BOP has discretion to allocate earned time credits between transfers to prerelease custody or supervised release.  *See* § 3632(d)(4)(C). This includes the option to apply credits entirely to advance the start of the term of supervised release (up to a maximum of twelve months), to accelerate placement in prerelease custody, or to do both.  *Komando v. Luna*, 2023 WL 310580, at *7 (D.N.H. Jan. 13, 2023), *report and recommendation adopted sub nom.*, *Komando v. FCI Berlin, Warden*, 2023 WL 1782034 (D.N.H. Feb. 6, 2023); *see also Morales v. Brewer*, 2023 WL 3626315, at *2 (E.D. Cal. May 24, 2023) ("Those courts to have considered the issue have uniformly found that whether to apply FSA time credits to prerelease custody or supervised release is within the discretion of the BOP." (collecting district court cases)), *report and recommendation adopted*, 2023 WL 4535042 (E.D. Cal. July 13, 2023).  But the BOP does not have statutory discretion to withhold application of FSA earned time credits "toward time in prerelease custody or supervised release" to an eligible prisoner who has earned the credit.  *See Guerriero v. Miami RRM*, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024) (per curiam) (quoting § 3632(d)(4)(C)).  "Shall" means "shall."  *See Valladares v. Ray*,

130 F.4th 74, 79 (4th Cir. 2025) (citing § 3632(d)(4)(A)) ("The award and computation of time credits is mandatory.").[16]

What is less settled is whether Petitioner has alleged sufficient facts to satisfy either of *Sandin*'s definitions of "real substance." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). With respect to the first definition, "[a] hallmark example" that affects the duration of the prisoner's sentence "is the revocation of good-time credit." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (per curiam) (citing *Sandin*, 515 U.S. at 484). Petitioner has not argued that the denial of FSA earned time credits toward prerelease custody affects the length of his sentence, and rightly so. Thus, the second definition is at issue, and the court must decide whether such a denial imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 418 U.S. at 487.

Some courts have found that the denial or revocation of prerelease custody generally meets *Sandin*'s hardship standard. For instance, in *Kuzmenko v. Phillips*, the court observed that "although Petitioner's claim here may not ultimately change

---

[16] Other district courts also have ruled that the BOP exercises no discretion to deny application of earned FSA time credits. In *Woodley v. Warden, UPS Leavenworth*, the court concluded that under § 3632(d)(4)(C)'s directive of "shall," the BOP is required to transfer a prisoner to prerelease custody or supervised release if the prisoner is deemed "eligible" under § 3624(g). 2024 WL 2260904, at *2–3 (D. Kan. May 15, 2024). While *Woodley* was not addressing a due process liberty interest argument, its ruling signaled the absence of the BOP's discretion. Also, in *Ramirez v. Phillips*, the court interpreted the application of earned time credits under the FSA as mandatory for eligible prisoners. 2023 WL 8878993, at *4 (E.D. Cal. Dec. 22, 2023). It found that the BOP does not have the discretion to exclude an eligible prisoner from having his earned time credits applied because the language in § 3632(d)(4)(C) is mandatory. *Id.*

the length of her custody, success on her argument would lead to her 'earlier release from confinement.'"   2025 WL 779743, at *3 (E.D. Cal. Mar. 10, 2025).   It emphasized that "[u]nlike the differences in confinement outlined in *Sandin*, the difference between home confinement and detention in a custodial setting is undoubtedly significant."  *Id.*; *accord Martin v. Phillips*, 2025 WL 732829, at *2 (E.D. Cal. Mar. 7, 2025).

Similarly, in *Adepoju v. Scales*, the court found that revoking an inmate's placement in an RRC and returning him to incarceration, even a low-security prison, constituted "an atypical and significant hardship."  2025 WL 1392287, at *11 (E.D. Va. May 14, 2025).  Additionally, in *Wesa v. Engleman*, the court determined that release to home confinement, through FSA earned time credits, established a liberty interest that warranted due process protections if revoked.  *See* 2025 WL 2005224, at *10–11 (C.D. Cal. June 6, 2025) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) and *Young v. Harper*, 520 U.S. 143, 145–48 (1997)).  The *Wesa* court elaborated that prerelease custody is fundamentally different from the prison setting: "Petitioner was able to keep his own residence, maintain a job and visit with family and friends such that his quality of life . . . was very different from that of confinement in prison."  *Id.* at *11 (internal quotation marks and citation omitted).

The reasoning of these courts is persuasive, despite some courts having ruled otherwise.  *See, e.g.*, *Fiorito v. Fikes*, 2022 WL 16699472, at *5 (D. Minn. Nov. 3,

2022) (finding that the "application of FTCs is contingent on maintaining a minimal or low risk of recidivism as assessed by the BOP" or obtaining an exception from the warden and that this contingency "makes it doubtful that FTCs are a protected liberty interest"), *aff'd*, 2023 WL 4841966 (8th Cir. July 28, 2023) (per curiam).

Here, Petitioner asserts that he earned FSA time credits, which subsequently were rescinded. Additionally, he contends that he had satisfied the eligibility criteria for these FSA earned time credits, yet they were taken away without due process. (Doc. # 1 at 2, 4, 5.) These allegations are taken as true under the Rule 12(b)(6) standard and arguably establish a liberty interest in the credits. In line with *Wolff*,

> [T]he [Congress] having created the right to [FSA earned time credits] and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within [Fifth] Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the [federal-created] right is not arbitrarily abrogated.

418 U.S. at 557 (alterations added). In sum, the principles established in *Wolff* and refined in *Sandin*, when applied in the context of the FSA, support the conclusion that Petitioner has a liberty interest in these earned time credits that cannot be revoked without due process.

## VI.    CONCLUSION

Based on the foregoing discussion, jurisdiction is proper under § 2241, enabling the court to review Petitioner's challenges to BOP regulations that

allegedly conflict with federal statutes and to the denial of placement in prerelease custody under the FSA.  To this extent, Respondent's arguments for dismissal, citing jurisdictional defects, are rejected.  Additionally, Respondent's arguments that Petitioner does not have a protected liberty interest in the application of FSA earned time credits toward prerelease custody are rejected.  However, Petitioner's claim that, since May 14, 2020, the BOP incorrectly has assessed his recidivism level due to documentation errors, resulting in an award of only 10 days of FSA earned time credits per month instead of 15, is dismissed.

It is ORDERED that an evidentiary hearing on the merits is scheduled for **November 7, 2025**, at **9:00 a.m.** in Courtroom 2B of the Frank M. Johnson, Jr. United States Courthouse, One Church Street, Montgomery, Alabama.  The United States Marshal's Service is DIRECTED to secure the attendance of Petitioner at the hearing.

Respondent is DIRECTED to file a brief on the merits of Petitioner's claims, along with supporting evidentiary materials, on or before **October 10, 2025**.

Petitioner is DIRECTED to file a response to Respondent's brief, along with supporting evidentiary materials, on or before **October 24, 2025**.

It is further ORDERED that, in the interests of justice, J. Mitchell McGuire, Esq., is appointed provisionally to represent Petitioner, *see* 28 U.S.C. § 3006A(a)(2)(B).  Counsel for Petitioner shall file a notice of appearance on or

before **September 17, 2025**, and shall file under seal a financial affidavit from

Petitioner on or before **September 24, 2025**,

DONE this 8th day of September, 2025.

/s/ W. Keith Watkins
_____
UNITED STATES DISTRICT JUDGE
